U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

JAN - 8 2009

ROBERT H. SHEMWELL, CLERK
BY _____
DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

RONNIE HACK (#180188)              CIVIL ACTION NO. 08-846; SEC.P

VERSUS                             JUDGE JAMES T. TRIMBLE

ALFONSO PACHECO, ET AL.            MAGISTRATE JUDGE JAMES D. KIRK

## REPORT AND RECOMMENDATION

Before the Court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on June 13, 2008, by *pro se* plaintiff Ronnie Hack and an Amended Complaint filed on October 23, 2008, in response to the Court's Memorandum Order. Plaintiff is currently incarcerated at Winn Correctional Center in Winnfield, Louisiana. He claims that he was denied proper medical care in violation of his constitutional rights, and he seeks compensatory and punitive damages, as well as injunctive relief. He names as defendants Dr. Alfonso Pacheco, Pat Thomas, Warden Tim Wilkinson, Winn Correctional Center (WCC), and Corrections Corporation of America (CCA).

## STATEMENT OF THE CASE

Plaintiff alleges that he began complaining of itching and sore, irritated skin when he was housed at the Lafayette Parish Jail in 2006. [Doc. #9, p.1] He states that the itching continued while he was incarcerated at Winn from 4/30/07 through 7/30/07, but he received "*no medical care and treatment*" despite complaining to the medical department of his condition. [Doc. #9, p.1] Plaintiff

was reportedly transferred to a work release program at Hunt Correctional from 7/30/07 to 11/23/07, where he was treated with RID Shampoo, hydroxyzine, and naproxen for complaints of itching. [Doc. #9, p.1, 21, 22] According to Plaintiff, the treatment temporarily relieved his symptoms. However, Plaintiff sates that he *"started on another itching journey"* on 12/03/07, while he was still housed at Hunt Correctional Center. He believes that he has scabies, and he states that the treatment at Hunt *"never got rid of scabee infection permanently causing ongoing scabee bugs to eat away at Plaintiff's flesh, leaving bite marks and sores that turned colors like the rainbow with a pot of lepercauns gold."* [Doc. #9, p.2]

On 12/10/07, Plaintiff was sent from the work release program at Hunt back to Winn Correctional *"for disciplinary reasons for messing up at work release."* Due to the disciplinary infractions, Plaintiff was placed directly into the Cypress unit. When Plaintiff was to be released from Cypress unit into the general population at WCC, Plaintiff states that he refused because he didn't want to infect other inmates with scabies. [Doc. #9, p.2].

Plaintiff states that, on January 25, 2008, he received a "write up" for refusing to go back to general population, which resulted in the loss of 60 days of "good time." However, he concludes that the loss of "good time" was due to his scabies infection, rather than his refusal to join general population.

2

[Doc. #9, p.2] Nonetheless, on March 7, 2008, Plaintiff finally agreed to return to general population because he did not want to lose any additional good time. [Doc. #9, p.2]

The next day, March 8, 2008, Plaintiff informed the unit manager that he had a "severe" medical condition that the medical department was refusing to help him with. Plaintiff claimed that he had a medical emergency and was concerned about infecting other inmates. [Doc. #9, p.2] Shift supervisor Gaskill contacted the medical department but was told that they could not treat Plaintiff's condition. Plaintiff told Gaskill that he did not want to infect other inmates, but he was ordered to return to his housing unit anyway. [Doc. #9, p.3] Plaintiff refused, and he was placed back in Cypress unit for ten days due to aggravated disobedience. [Doc. #9, p.3]

Plaintiff states that he has tried on many occasions to contact the warden, but received no response. While Plaintiff complains that the defendants refuse to treat him, he provides the Court with more than fifteen dates on which he was seen for his medical complaints during eight months of being housed at WCC. [Doc. #9, p.3, 4, 5]

Plaintiff claims that he has caused other inmates in his tier to itch because of his untreated infection; that his skin has sores from the scabies causing his skin to turn green, black, and red; and, that his skin condition is obvious to a layperson. [Doc. #1,

## LAW AND ANALYSIS

### 1. Medical Care

Plaintiff claims that he has made numerous sick calls at WCC seeking treatment for scabies, but he has not received medical treatment. Plaintiff states that he was told by a nurse at Hunt Correctional that he probably had scabies. [Doc. #9, p.24]

Plaintiff provided medical records indicating that he was examined by Dr. Pacheco on May 8, 2007, no treatment was ordered, and he was referred to mental health. [Doc. #9, p.17] Plaintiff made another sick call on May 13, 2007, *"for something crawling on him,"* and again on May 15, 2007. He was seen each time. [Doc. #9, p.18]

After being expelled from work release and returned to WCC, Plaintiff continued to make sick calls. He made a sick call on January 1, 2008, indicating that he has had a problem with itching for *"a long time."* He received medication on January 3, 2008, and on January 5, 2008, the medical staff noted "Problem resolved." Doc. #9, p.25] Plaintiff made another sick call on January 26, 2008, because he felt things *"crawling all over, and in face and nose."* [Doc. #9, p.25-27] He was assessed and referred to the doctor. On March 22, 2008, Plaintiff made another sick call stating that he was *"starting to itch again, not as much but it starting again."* [Doc. #9, p.28] Plaintiff's next sick call was

April 1, 2008, because he was starting to itch all over his body and *"in my face and head."* Plaintiff was seen on April 3, 2008, at which time he refused hydrocortisone cream to treat his itching. [Doc. #9, p.29] Additional sick calls were made on April 9, 2008, to see the doctor about a lice treatment that was ordered, and April 16, 2008. Plaintiff was seen again on May 27, 2008, June 10, 2008, July 1, 2008, July 15, 2008, August 5, 2008, and September 15, 2008, for the same complaints. [Doc. #9, p.32-38] On September 15, Plaintiff complained that he had a lump on his chest in addition to the itching. He was sent to the hospital for an examination on October 14, 2008. Plaintiff complains that, at the hospital, they *"did nothing but evaluated me."* [Doc. #9, p.41]

In one document provided by Plaintiff, it is noted that no bugs were seen on Plaintiff or in his cell over three visits. It also indicates that Plaintiff is being seen by mental health "for bugs he has had x14 years." [Doc. #9, p.33]

To prevail under 42 U.S.C. § 1983, Plaintiff must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate ... medical care.'" Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006)(quoting Farmer v. Brennan, 511 U.S. 825,

832 (1994)). A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain. See Wilson v. Seiter, 501 U.S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97 (1976).

The Eighth Amendment deliberate-indifference standard has both an objective and subjective component. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). To establish deliberate indifference under this standard, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) actually drew an inference that such potential for harm existed. See id. at 837; Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). The Fifth Circuit has stated that the deliberate indifference standard is an "extremely high" one to meet. See Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A prison official acts with deliberate indifference only if he knows that the inmate faces a substantial risk of serious bodily harm, and he disregards that risk by failing to take reasonable measures to abate it. See Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006)(citing Farmer, 511 U.S. at 847). **"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's**

disagreement with his medical treatment, absent exceptional circumstances." Id. (citations omitted). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials **refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.** Id. (citations omitted).

Plaintiff's allegations fall short of the deliberate indifference standard that is necessary to state a claim under the Eighth Amendment. Documents submitted by Plaintiff indicate that he has had this skin condition for many years. The documents also indicate that no bugs were seen on Plaintiff or in his cell, despite his complaints to the contrary. He was treated with RID shampoo at Hunt Correctional and WCC, as well as hydroxyzine, naproxyn, and hydrocortisone cream. He also refused treatment with hydrocortisone cream on one occasion. Plaintiff made numerous sick calls at WCC and was seen countless times by the medical department. He was referred to mental health for treatment, and was, at some point, examined by that department. [Doc. #9, p. 17 and 33]

While Plaintiff alleges that he was denied care, his amended complaint and exhibits indicate otherwise. It appears that Plaintiff has diagnosed himself with scabies and is dissatisfied with the treatment he has received at WCC. To the extent that

Plaintiff disagrees with the type or level of care that he received, the Fifth Circuit has repeatedly held that mere disagreement with medical treatment **does not** state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. See Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir. 1999); Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985); Young v. Gray, 560 F.2d 201, 201 (5th Cir. 1977). Likewise, it is well established that allegations of unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference. See Gobert, 463 F.3d at 347(citations omitted); see also Daniels v. Williams, 474 U.S. 327, 328 (1986); Marsh v. Jones, 53 F.3d 707, 712 (5th Cir. 1995). The remedy for this type of injury, if any, must be sought in state court through traditional tort law principles.

Plaintiff does not allege facts showing that he was refused care or that the defendants intentionally treated him incorrectly with wanton disregard for his medical condition. Plaintiff's allegations sound in negligence, at best. As such, his allegations are not sufficient to establish that he was treated with deliberate indifference and do not state a violation of the Eighth Amendment. His medical care claim should be dismissed.

## 2. Disciplinary Conviction

Plaintiff states that he was written up for refusing to return

to the general prison population at Winn. [Doc. #9, p.2,3]  He
claims that he was concerned that his itching and sores were
contagious and would be spread to other inmates if he entered the
general population. [Doc. #9, p.2]  It was determined that
Plaintiff had no valid reason for refusing to return to the general
prison population. He was found guilty of aggravated disobedience,
which resulted in the loss of sixty days of earned "good time"
credits. [Doc. #9, p.47]

In _Preiser v. Rodriguez_, 411 U.S. 475 (1973), the Supreme
Court held that a _habeas corpus_ petition is the sole remedy for a
state prisoner challenging the forfeiture of accrued good-time
credits as a result of a disciplinary charge. _Id._ at 500; see also
_Heck v. Humphrey_, 512 U.S. 477, 481 (1994)("habeas corpus is the
exclusive remedy for a state prisoner who challenges the fact or
duration of his confinement and seeks immediate or speedier
release").  In the case _In re Cain_, 137 F.3d 234, 236 (5th Cir.
1998), the Court relied on _Preiser_ in holding that a prisoner may
seek redress for the loss of good-time credits following a prison
disciplinary proceeding only through a habeas petition. Also, in
_Clarke v. Stalder_, 154 F.3d 186, 189 (5th Cir. 1998) the Court
found that a prisoner cannot challenge the fact or duration of his
confinement or recover good time credits lost in prisoner
disciplinary action through a §1983 suit.  Thus, Plaintiff's
challenge to his disciplinary conviction should also be dismissed.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that Plaintiff's claims be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and failing to state a claim upon which relief may be granted under 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED at Alexandria, Louisiana, this ⎰⎰⎰ day of ⎯⎯⎯⎯⎯⎯⎯⎯⎯ 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE